1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10
11  JAVAUGHN ROBINSON,                    Case No.:  20-cv-2106-GPC-AHG
12                          Plaintiff,
                                          **ORDER GRANTING DEFENDANTS'**
13  v.                                    **MOTION FOR SUMMARY**
                                          **JUDGMENT FOR FAILURE TO**
14  ZAMBRANO, et al.,                     **EXHAUST ADMINISTRATIVE**
                                          **REMEDIES**
15                          Defendants.
16                                        **[ECF No. 26]**
17

18          Before the Court is Defendants' Motion for Summary Judgment for Failure to
19  Exhaust Administrative Remedies. ECF No. 26. Plaintiff did not oppose the motion. For
20  the reasons set forth below, the Court hereby **GRANTS** Defendants' Motion for
21  Summary Judgment. Further, the Court finds this motion is suitable for disposition
22  without a hearing pursuant to Civil Local Rule 7.1(d)(1) and **VACATES** the April 15,
23  2022 hearing date set for this matter.
24  / /
25  / /
26  / /
27
28                                        1

# BACKGROUND

## I.     Procedural Background

On October 26, 2020, Plaintiff filed her civil rights complaint pursuant to 42 U.S.C. § 1983, claiming two correctional officers at Richard J. Donovan Correctional Facility ("RJD") violated her Eighth Amendment rights, and subjected her to emotional distress. ECF No. 1. Along with the Complaint, Plaintiff filed concurrently a Motion to Proceed In Forma Pauperis ("IFP"). ECF No. 2. Because Plaintiff sought to proceed IFP, the Court performed pre-Answer screening of Plaintiff's complaint pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A. ECF No. 5. The Court granted Plaintiff's motion to proceed IFP, but sua sponte dismissed Plaintiff's Complaint for failure to state a claim upon which relief could be granted under the Eighth Amendment. ECF No. 5 at 7. However, the Court granted Plaintiff leave to file an amended complaint within 45 days of the publishing of the Court's November 16, 2020 Order. ECF No. 5 at 7-8. On January 21, 2021, Plaintiff filed a First Amended Complaint ("FAC"), which is the operative complaint in this action. ECF No. 8. In its sua sponte review of Plaintiff's FAC, the Court found that Plaintiff had stated cognizable First and Eighth Amendment claims, brought under 42 U.S.C.§ 1983. ECF No. 11.

Defendants filed the instant motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies on January 31, 2022. ECF No. 26-1. Along with the motion, Defendants filed a Separate Statement of Facts and Conclusions of Law ("SSF") in support of their motion. ECF No. 26-2. The Court issued an order setting the briefing schedule on February 1, 2022. ECF No. 27. Plaintiff did not oppose Defendants' motion.

## II.    Factual Background

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation. ECF No. 26-1 (Defs.' Mot.) at 2, 6. Plaintiff is currently in custody in

California State Prison – Sacramento. ECF No. 15 at 1. However, when Plaintiff filed her original complaint, and the time period of the allegations Plaintiff brings in her complaint, Plaintiff was in custody in the California state Richard J. Donovan Correctional Facility ("RJD"). *See* ECF No. 8.

The events that underly the allegations in Plaintiff's complaint took place on August 28, 2020. FAC at 2.

     **a.**    **Plaintiff's Grievances, Denials, and Appeals**

         i.   *First Grievance*

Plaintiff filed an administrative grievance, number 37674, on September 8, 2020 alleging "Sexual Misconduct, Disorderly Conduct and serious greats of violence, discrimination" for the Defendants' actions towards Plaintiff when they escorted her to and from the emergency room for her fractured ankle. ECF No. 26-4 (Le Decl., Ex. D) at 13. Plaintiff's grievance was denied on November 5, 2020. ECF No. 26-5 (Mosely Decl.) at 9. During Plaintiff's deposition, counsel for Defendants confirmed that Plaintiff had received the denial of her grievance on November 5, 2020. ECF No. 26-3 (Corso Decl.) at 7.[1] Plaintiff appealed the denial of her grievance. *Id.* at 7-9. Plaintiff mailed the appeal

_____

[1] Q. Do you remember seeing this denial?

A. Yeah

[…]

Q. And that's the denial for the same grievance that you previously filed that I showed you . . .

A. Yeah

[. . .]

Q. Okay. Well, what I want to confirm is that you received this denial.

A. Yeah, I did.

of the grievance on January 7, 2021. ECF No. 26-2 (SSF) at 4. Importantly, Plaintiff filed her original Complaint on October 26, 2020, approximately ten days before she received the denial of her grievance. *See* ECF No. 1.

Plaintiff mailed an appeal of grievance number 37674 on January 6, 2021 that was postmarked on January 7, 2021. ECF No. 26-2 (SSF) at 4. The appeal was received by the Office of Appeals on January 7, 2021. ECF No. 26-5 (Moseley Decl.) at 3; ECF No. 26-2 (SSF) at 5.

### ii.   *Second Grievance*

Plaintiff filed a second grievance on September 8, 2020 (the same date as the first grievance discussed above), which is identified in CDCR records as grievance number 39405. ECF No. ECF No. 26-4 (Le Decl., Ex. D) at 23. In this grievance, Plaintiff also alleged "sexual misconduct threats of serious violence on date of August 27 date of outside hospitalization I encountered sexual misconduct, almost being killed on the freeway, threats of violence and discrimination at the hands of Zembrano and DIII." *Id.* This second grievance, based on the same facts as the first grievance, was also denied on November 5, 2020. ECF No. 26-3 (Pl.'s Dep.) at 12. Plaintiff did not file a final-level appeal related to this grievance. *See* ECF No. 26-5 (Moseley Decl.) at 3; ECF No. 26-3 (Pl.'s Dep.) at 11. Plaintiff confirmed that she filed a final-level appeal after the first grievance was denied, but did not do so after she received the denial of the second grievance. *See* ECF No. 26-3 (Pl.'s Dep.) at 12.

/ /

/ /

_____

Q. Okay. Do you remember receiving it on November 5th—and it says right here, November 5th 2020?

A. Yeah.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.      Plaintiff's First Amended Complaint

The FAC alleged that on August 28, 2020, Defendants Zambrano and Duarte III transported Plaintiff from RJD to a hospital for treatment of "severe fractures to her ankle." FAC at 2. In the course of the transportation to and from the hospital, Defendant Duarte disregarded Plaintiff's attempt to report sexual misconduct threatened to put Plaintiff in administrative segregation if she continued such attempts to report sexual misconduct, drove the transportation vehicle over the speed limit and in a manner that "caus[ed] Plaintiff, who was shackled to sway and slam numerous times into the car['s] interior structure, causing extreme pain to Plaintiff's fractured ankle." *Id.* at 2-3. Further, Plaintiff alleged that "[w]hile in route to R.J.D. Plaintiff was adjusting her bra . . . defendant Duarte, who was in the front pass[e]nger seat, turned around and motioned to Plaintiff to show him her breast." *Id.* at 3. Plaintiff asked if the officers would still send her to the "Hole" (administrative segregation) if she complied with the request, and "defendant shook his head no," so "[i]n fear Plaintiff complied to Defend[a]nt's Duartes sexual advances." *Id.*

Based on these facts, Plaintiff filed her Complaint, and subsequent FAC, alleging Eight Amendment deliberate indifference, Eighth Amendment excessive force, and First Amendment retaliation claims. *Id.* at 3-4.

### DISCUSSION

### I.    Legal Standard

### a.      Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure ("Rule") 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986); Fed. R. Civ. P. 56.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

1  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material when it

2  affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

3  (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a

4  reasonable jury to return a verdict for the nonmoving party.  *Id*.

5       The affirmative defense of failure to exhaust is properly raised in a Rule 56 motion

6  for summary judgment. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). On a

7  motion for summary judgment on the issue of exhaustion, the moving party bears the

8  initial burden to prove "that there was an available administrative remedy, and that the

9  prisoner did not exhaust that available remedy." *Id.*

10       Once the defendant has met its burden, the prisoner has the burden of production

11  and "the burden shifts to the prisoner to come forward with evidence showing that there

12  is something in his particular case that made the existing and generally available

13  administrative remedies effectively unavailable to [them]." *Id.* (citing *Hilao v. Estate of*

14  *Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996) (the "burden shifts to the plaintiff to rebut

15  by showing that the local remedies were ineffective, unobtainable, unduly prolonged,

16  inadequate, or obviously futile.")).  Ultimately, the defendant bears the burden of proof.

17  *Id.* For purposes of summary judgment, a court must "view all of the facts in the record in

18  the light most favorable to the non-moving party and rule, as a matter of law, based on

19  those facts." *Id.* at 1173 (citing *San Diego Police Officers' Ass'n v. San Diego City*

20  *Employees' Ret. Sys*., 568 F.3d 725, 733 (9th Cir. 2009)).

21       A court will grant summary judgment under Rule 56 "if undisputed evidence

22  viewed in the light most favorable to the prisoner shows a failure to exhaust." *Albino*, 747

23  F.3d at 1166. The court must deny summary judgment "if material facts are disputed,"

24  but the district judge, rather than a jury, will determine the facts pertaining to exhaustion.

25  *Id*.

26  / /

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### b.   Administrative Exhaustion

Disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation before reaching the merits of a prisoner's claim.  *Albino*, 747 F.3d 1162, 1170-1171 (9th Cir. 2014).  If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits.  *Id.*

The Prison Litigation Reform Act ("PLRA") mandates that inmates exhaust all available administrative remedies before filing "any suit challenging prison conditions," including, but not limited to, suits under § 1983. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). An inmate is required to exhaust only *available* remedies.  *Booth,* 532 U.S. at 736, 121 S.Ct. 1819; *Brown v. Valoff,* 422 F.3d 926, 936–37 (9th Cir.2005). To be available, a remedy must be available "as a practical matter"; it must be "capable of use; at hand." *Id.* at 937 (quoting *Brown v. Croak,* 312 F.3d 109, 113 (3d Cir. 2002)). The Supreme Court has recognized three contexts in which an administrative procedure is "unavailable": (1) "when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—*i.e.,* some mechanism exists to provide relief, but no ordinary prisoner can navigate it"; and (3) "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1853–54 (2016).

1
2
3
4
5
6
7
8
9

Importantly, "proper exhaustion of administrative remedies means using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). An untimely or otherwise procedurally defective appeal will not satisfy exhaustion. *Id.* at 90. The prisoner is required to "complete the administrative review process in accordance with the applicable procedural rules . . . that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). Thus, in this case, "[t]he California prison system's requirements define the boundaries of proper exhaustion." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (citations omitted).

10
11
12
13
14
15
16
17
18
19
20
21

Except in limited circumstances, prisoners are required to complete "total exhaustion" prior to filing suit. *Jones*, 549 U.S. at 211. The Ninth Circuit has held that a plaintiff's failure to timely exhaust was excused because the prisoner took reasonable and appropriate steps to exhaust and was prevented from exhaustion by the Warden's mistake, and not through his own fault. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (excusing failure to exhaust because Warden responded with an incorrect citation and inmate spent many unsuccessful attempts to obtain the regulation). The Ninth Circuit has also noted that a prisoner may be excused from exhausting administrative remedies if prison officials improperly screen out inmate grievances. *Sapp v. Kimbrell*, 623 F.3d 813, 824, 826 (9th Cir. 2010) ("[E]xhaustion might also be excused where repeated rejections of an inmate's grievances at the screening stage give rise to a reasonable good faith belief that administrative remedies are effectively unavailable.").

22

## II.    Analysis

23
24
25
26

In their motion for summary judgment, Defendants argue that Plaintiff was required to exhaust administrative remedies, and failed to do so. The California prison system's administrative grievance process under which any inmate may appeal any policy, decision, condition, or omission by the department or its staff that the inmate can

27
28

20-cv-2106-GPC-AHG

demonstrate as having a material adverse effect upon her health, safety, or welfare. Cal. Code of Regs. tit. 15, § 3084, et seq.

In order to initiate the grievance process, a person in custody files CDCR Form 602. *Id.* § 3084.2(a). If an individual inmate's grievance relates to alleged sexual misconduct by a member of the CDCR staff, there is no time limit during which the inmate must file the grievance. *Id.* § 3084.9(a)(5)(A). The administrative grievance process includes three levels of review. *Id.* § 3084.7. If an initial grievance is denied, an inmate may appeal the denial. Grievances involving allegations of sexual misconduct are treated as emergency appeals. *Id.* § 3084.9(a)(5). Emergency appeals are not screened, and are immediately reviewed by the hiring authority, such as the warden of the facility, and are processed at the outset as a second level of review (rather than a first-level screening). *Id.* Any request for an appeal to perform a third level of review must be filed within thirty calendar days of the denial of the initial review. *Id.* §§ 3084.9(a)(5)(A)(7), 3084.8(b)(3). If CDCR issues a final decision denying the grievance at the third level of review, that is when the administrative grievance process has been completed, and the time at which a grievance satisfies the exhaustion requirement under 42 U.S.C. 1997(e)(a). *Lira v. Herrera*, 427 F.3d 1164, 1166 (9th Cir. 2005).

In this case, Plaintiff submitted two grievances on September 8, 2020 related to the events she alleged occurred during her transportation to and from the hospital for treatment on August 27, 2020. ECF No. 26-2 (SSF) at 4. The grievances, which alleged sexual misconduct by corrections officers employed by CDCR, were reviewed initially at the second level of review. The grievances were denied on November 5, 2020, and Plaintiff confirmed that she received the denial of those grievances. ECF No. 26-3 (Corso Decl.) at 7. The denials of Plaintiff's grievances stated: "If you are dissatisfied with the decision of this claim, you may file a 602-2, appeal with the California Department of Corrections and Rehabilitation Office of Appeals." ECF No. 26-2 (SSF) at 4. Plaintiff

1    mailed her appeal of the denial of her grievance on January 6, 2021, which was

2    postmarked on January 7, 2021 and received by the Office of Appeals on January 11,

3    2021. ECF No. 26-5 (Moseley Decl.) at 3. The Office of Appeals rejected Plaintiff's

4    appeal for grievance number 37674 because "[y]ou did not submit the claim within the

5    timeframe required by the California Code of Regulations, title 15. The date you received

6    a claim decision response from the Department was 11/13/20; the date you submitted this

7    claim was 1/11/2021. You should have submitted your claim on or before 12/13/2020 to

8    meet the 30 calendar day requirement set forth in the regulations." *Id.* at 15.

9    Based on the legal and factual bases for Defendants' motion for summary

10   judgment as the Court described above, the dispositive set of facts in that CDCR offers a

11   process for inmates to file grievances and appeal denials of any issues they raise. *See* Cal.

12   Code of Regs. tit. 15, § 3084, et seq. Therefore, the timeline in this case is dispositive for

13   the purpose of resolving Defendants' motion: First, Plaintiff submitted her grievances on

14   September 8, 2020. ECF No. 26-4 (Le Decl., Ex. D) at 13. Second, Plaintiff filed the

15   complaint underlying this action on October 26, 2020. *See* ECF No. 1. Third, Plaintiff

16   received notice that her grievances had been denied on November 5, 2020 with

17   instructions to file any appeal within thirty calendar days. ECF No. 26-5 (Mosely Decl.)

18   at 9. Therefore, the Court finds that Plaintiff filed the initial Complaint not only before

19   she had exhausted the available administrative remedies as outlined in California law, but

20   also before she received the first denial of her grievances. After the denial, Plaintiff

21   appealed the denial of the first grievance, but did so almost a full month after the 30-

22   calendar-day deadline during which she was required to do so. *See* Cal. Code of Regs. tit.

23   15, 3084.9(a)(5)(A)(7), 3084.8(b)(3).

24   / /

25   / /

26   / /

27

28

20-cv-2106-GPC-AHG

**CONCLUSION**

Accordingly, the Court finds that there were available administrative remedies under the CDCR system, and that Plaintiff failed to exhaust available administrative remedies prior to filing her Complaint and initiating this action as required by the Ninth Circuit under *Albino*. For the reasons set forth above, the Court hereby **GRANTS** Defendants' motion for summary judgment for failure to exhaust administrative remedies.

**IT IS SO ORDERED.**

Dated: April 12, 2022

Hon. Gonzalo P. Curiel
United States District Judge

11

20-cv-2106-GPC-AHG